IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


FRED LEE, JR.,
       Petitioner,

vs.                             Case No. 3:09cv83/RV/EMT

EDWIN G. BUSS,[1]
       Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 16).  Petitioner filed a reply and supplemental authority (Docs. 21, 29).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 16, Exhibits).[2]  Petitioner was indicted in the Circuit Court in and

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 16).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

for Escambia County, Florida, on a charge of first degree premeditated murder with a firearm for the killing of his ex-wife, Wanda Lee (Ex. A at 1–2).  Following a jury trial on February 7–9, 2005, he was found guilty of second degree murder with a firearm (Ex. A at 95, Ex. B).  On March 24, 2005, Petitioner was sentenced to a term of forty-five (45) years of imprisonment, with pre-sentence credit of 409 days (Ex. A at 97–162).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA") (*see* Ex. C).  The First DCA affirmed the judgment per curiam without written opinion on March 21, 2006, with the mandate issuing April 6, 2006 (Exs. F, G).  Lee v. State, 925 So. 2d 296 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek further review.

On July 6, 2006, Petitioner filed a petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel (Ex. H).  The First DCA denied the petition on the merits on November 22, 2006 (Ex. K).  Lee v. State, 943 So.2d 296 (Fla. 1st DCA 2006).

On April 5, 2007, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. L).  The state circuit court summarily denied the motion in an order rendered October 4, 2007, and denied Petitioner's motion for rehearing on December 4, 2007 (Exs. M, N, O).

On January 8, 2008, Petitioner filed a second Rule 3.850 motion (Ex. P).  The state circuit court summarily denied the motion as successive in an order rendered January 22, 2008 (Ex. Q).  Petitioner filed a petition for belated appeal in the First DCA, seeking a belated appeal of the January 22, 2008 order (Ex. R).  The First DCA granted the belated appeal (Ex. Z).  Lee v. State, 987 So.2d 2191 (Fla. 1st DCA 2008).  The First DCA affirmed the judgment per curiam without written opinion on January 15, 2009, with the mandate issuing March 4, 2009 (Ex. CC).  Lee v. State, 3 So.3d 321 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on February 22, 2009 (Doc. 1).  Respondent concedes that the petition is timely (Doc. 16 at 4–5).

II.   STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254(d) provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1237 (11th Cir. 2011); see Knowles v. Mirzayance, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. Dicta in opinions is not controlling. Thaler v. Haynes, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313, 1315 (11th Cir. 2010). A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point. Bowles, 608 F.3d at 1316 (citing Renico v. Lett, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. To be entitled to deference, the state court decision need not cite to Supreme Court case law. As the Supreme Court clarified: "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. See Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct

legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. Knowles, 129 S. Ct. at 1419. Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable. See Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications.  Cave v. Sec'y for Dep't of Corr., — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011).  However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti, 551 U.S. at 953.  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

## IV.  PETITIONER'S CLAIMS

A.  Ground One:  "Denial of due process by the trial court allowing the admissal [sic] of hearsay 'Williams Rule' evidence."

Petitioner asserts the trial court erred by admitting testimony of Clarence Russell, the victim's boyfriend, that Petitioner twice threatened him with a gun months prior to the murder (Doc. 1 at 4, 8–10).[8]  Petitioner contends the testimony was irrelevant, and the State's sole purpose in introducing it was to show his bad character (*id.* at 8–10).  Therefore, the evidence was not admissible under the "Williams Rule" (*id.* at 8–10).[9]  Petitioner additionally asserts any probative value of the testimony was far outweighed by its prejudicial effect, rendering it inadmissible pursuant to Florida Statutes § 90.403 (*id.* at 9–10).  He claims the erroneous admission of the testimony deprived him of due process and a fair trial (*id.* at 4, 8).  Petitioner states he raised this claim on direct appeal of his conviction (*id.* at 4).

Respondent contends Petitioner's claim is not subject to federal habeas review because it raises only an issue of state law, even though Petitioner attempts to "clothe [it] in federal constitutional rainment [sic]" (Doc. 16 at 15–16).  Respondent additionally argues even if Petitioner's claim is cognizable, he is not entitled to relief under the AEDPA because there is no clearly established federal law setting forth the standard for admissibility of collateral crime evidence under the Due Process Clause; therefore, the state court's adjudication of Petitioner's claim cannot be contrary to or an unreasonable application of Supreme Court precedent (*id.*).

---

[8] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[9] In Williams v. State, the Supreme Court of Florida held that evidence of any fact relevant to a material fact in issue, except where the sole relevancy is character or propensity of the accused, is admissible unless precluded by some specific exception or rule of exclusion, and this rule applies to relevant similar fact evidence even though it points to the commission of another crime.  110 So. 2d 654, 663 (Fla. 1959).  The holding in Williams was codified in Florida Statutes Section 90.404(2), which provides in pertinent part:

(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

Fla. Stat. § 90.404(2)(a) (2004).

The state court record confirms Petitioner raised this due process claim on direct appeal of his conviction, where he argued the trial court erroneously admitted collateral crime evidence, specifically, Clarence Russell's testimony that Petitioner twice threatened him with a gun (Ex. C). The First DCA affirmed per curiam without written opinion. As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 .

It is well established that a challenge to a state trial court's ruling on a question of state law, for example, an evidentiary ruling, is cognizable on federal habeas only to determine whether the alleged error was so critical or important to the outcome of the trial to render the trial fundamentally unfair. Carrizales v. Wainwright, 699 F.2d 1053, 1053–54 (11th Cir. 1983). Such review is available under the Due Process Clause. *See* Hills v. Henderson, 529 F.2d 397, 401 n.6 (5th Cir. 1976). "The established standard of fundamental fairness [when reviewing state evidentiary rulings] is that habeas relief will be granted only if the state trial error was 'material in the sense of a crucial, critical, highly significant factor.'" Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (quoting Hills, 529 F.2d at 401). In this context, the Eleventh Circuit has reviewed a claim similar to the claim presented here. *See* Tejada v. Dugger, 941 F.2d 1551, 1561 (11th Cir. 1991). In Tejada, the petitioner claimed that the admission of Williams Rule evidence, specifically, testimony that the petitioner had once put a pillowcase over his girlfriend's head, tied her up, and threatened to kill her, rendered his trial fundamentally unfair because it only served the purpose of convincing the jury that he had a propensity to commit violent crimes. *Id.* The Eleventh Circuit expressed no opinion on the propriety of the trial court's admission of the evidence, holding that regardless of that question, the admission of the evidence did not deprive the petitioner of a fundamentally fair trial. *Id.* The court based this conclusion upon the determination that the challenged evidence was not "material" to the

conviction "in the sense of a crucial, critical, highly selective factor" because the State presented far more powerful evidence of his guilt through other testimony.  *Id.* (citing Shaw, *supra*).

Since Tejada, the legal landscape has changed with the passage of the AEDPA.  As previously discussed in the Standard of Review section of this Report, the AEDPA brought about a more deferential standard for habeas review of state court decisions under § 2254.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).  Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's constitutional claim.  *See* Panetti, 551 U.S. 930; Jones, 469 F.3d 1216 (same).

In Williams v. Taylor, the Supreme Court addressed the "clearly established law" requirement of § 2254(d)(1) before turning to the "contrary to, or an unreasonable application of," requirement.  529 U.S. 362, 379.  The Williams Court highlighted the importance of the clause immediately following the "clearly established law" requirement, "limiting the area of relevant law to that 'determined by the Supreme Court of the United States.'"  *Id.* at 381 (quoting 28 U.S.C. § 2254(d)(1)).  The Court then held that "[i]f this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."  *Id.*  In Lockyer v. Andrade, the Supreme Court subsequently held that the "clearly established law" requirement "refers to holdings, as opposed to dicta, of [the] . . . Court's decisions as of the time of the relevant state-court decision."  538 U.S. at 71 (quoting Williams, 529 U.S. at 412).

The Eleventh Circuit has held that the "clearly established law" requirement of § 2254(d)(1) does not include the law of the lower federal courts. *See* Dombrowski v. Mingo, 543 F.3d 1270, 1274 (11th Cir. 2008) (citing Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001)). Moreover, when no Supreme Court precedent is on point, the Eleventh Circuit has held that a state court's conclusion cannot be "contrary to clearly established Federal law as determined by the U.S. Supreme Court." *Id.* (quoting Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003)).[10]

Notably, two other district judges in this District recently denied habeas relief on claims very similar to Petitioner's claim. *See* Aquino v. McNeil, No. 4:06cv318/SPM/EMT, 2009 WL 2495762, at *1 (N.D. Fla. Aug. 10, 2009); Quintero v. McNeil, No. 4:08cv318/RH/MD, 2009 WL 1833872, at *1 (N.D. Fla. June 23, 2009). In Aquino, the habeas petitioner was charged with sexual battery on a single child victim. 2009 WL 2495726, at *1. The state trial court admitted evidence that Aquino had committed prior sexual acts on two other children. *Id.* Aquino asserted in his § 2254 petition that admission of the evidence violated his federal due process rights. *Id.* at *5. The district court held that Aquino was not entitled to federal habeas relief because there is no decision of the

---

[10] In Dombrowski, the habeas petitioner claimed that the Florida state sentencing court violated his Fifth Amendment right against self-incrimination by failing to advise him of this right before soliciting his admission to prior convictions for sentencing enhancement purposes. *Id.* at 1273. Dombrowski argued that the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), was clearly established federal law guaranteeing his Fifth Amendment right not to testify at his sentencing hearing about his prior convictions. *Id.* at 1274. Although the district court agreed that Miranda afforded Dombrowski such a right, the Eleventh Circuit was not persuaded and concluded that there is no clearly established federal law requiring sentencing courts to either determine that a defendant knows and understands the consequences of his admission to prior convictions for sentence enhancement purposes or to advise a defendant of his Fifth Amendment rights before hearing such an admission. *Id.* at 1276. Thus, the court adhered to its previous decisions in Washington v. Crosby and Isaacs v. Head, in which the court held that "where no Supreme Court precedent is on point, we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." *Id.* (citing Isaacs, 300 F.3d 1232, 1252 (11th Cir. 2002); Washington, 324 F.3d at 1265). In so deciding, the Eleventh Circuit stated that it was "mindful of the Supreme Court's reminder that 'rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.'" Dombrowski, 543 F.3d at 1276 (citing Williams, 529 U.S. at 382). However, the court was convinced that Dombrowski's Fifth Amendment argument did not rise to the level of a generalized standard, let alone a bright-line rule. *Id.* The court noted the wide disparity in opinion among its sister circuits on this issue and the lack of Supreme Court precedent directly on point. *Id.* The court also noted the Supreme Court's explanation in Williams that "[w]here the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." *Id.* (quoting Williams, 529 U.S. at 382) (internal quotation and citation omitted). The Eleventh Circuit was satisfied, however, that such a case was not before it. *Id.*

Supreme Court suggesting that admission of prior act evidence in the case at bar was unconstitutional.  *Id.* at *1.

Likewise, in Quintero, the habeas petitioner was charged with sexual battery on a single child victim.  2009 WL 1833872, at *1.  The state trial court admitted evidence not only that Quintero committed sexual batteries on the single victim but also that he also committed repeated sexual batteries years earlier on another child victim.  *Id.*  Quintero asserted in his § 2254 petition that the admission of this other-act evidence was unconstitutional.  *Id.*  The district court treated the issue as sufficiently raised on Quintero's direct appeal of his conviction and, thus, not procedurally defaulted.  *Id.*  The district court then denied habeas relief on the ground there was no clearly established federal law as determined by the Supreme Court suggesting that the admission of "other-act" evidence in the case at bar was unconstitutional.  *Id.*

The undersigned concludes that Petitioner is not entitled to relief for the same reason—he has failed to identify a Supreme Court case holding that the admission of similar fact or collateral crime evidence in circumstances such as the instant case is unconstitutional.  The evidence at trial showed that Wanda Lee was found shot twice—once in the back and once in the chest—in the bedroom she and Petitioner had shared before their estrangement and ultimate divorce.  Ballistics tests showed that the bullets came from a .357 magnum pistol similar to one Ms. Lee had given Petitioner as a present and that he kept in their house (Ex. B at 78, 81, 87, 90, 97, 110, 111, 133, 155, 163, 186, 242, 243).  Petitioner's defense was that the gun went off while he and his wife struggled for it after she had retrieved it from a closet shelf.

Kellyssa Abrams, the victim's daughter, identified the gun that she saw in Petitioner's truck as a 350 Magnum Cyclops (Ex. B at 81).  She testified she once saw Petitioner and her mother have a "physical" argument (*id.* at 82).  She additionally testified Petitioner told her (Ms. Abrams), "I love your mama and if I can't have her nobody else can," and she heard Petitioner say that to her mother (*id.* at 83).

Debra Russell, the sister of Clarence Russell, testified Clarence and Wanda were at her house approximately fourteen months before Wanda was killed, and Petitioner told Clarence to come out

to the street (Ex. Bat 129, 131).  Ms. Russell testified she threatened Petitioner to make him leave (*id.* at 129).

Jimmy Hazzard testified he has known Petitioner for sixteen or seventeen years and had a business relationship and friendship with him (Ex. B at 133).  He testified that after Petitioner and Wanda divorced and approximately three or four months prior to Wanda's death, Petitioner told him he had thought about killing Wanda and himself with a gun (*id.* at 133–34).

Clarence Russell testified that he had been dating Wanda Lee for approximately eight months prior to her murder, and they began dating after she was divorced from Petitioner (Ex. B at 92).  He testified that on February 10, 2004, the day Wanda Lee was killed, he had spoken with her on the telephone several times, and they were supposed to go out that night (*id.* at 92–93).  He testified he called her home at approximately 6:00 p.m., and Petitioner answered the phone (*id.* at 93).  Mr. Russell testified Petitioner "slammed the phone down" (*id.* at 94).  Mr. Russell then tried to call Ms. Lee's cell phone "about three" times, but she never answered (*id.* at 94).

Barbara Watson, Petitioner's aunt, testified she was in the house the evening Wanda Lee was killed (Ex. B at 137).  She testified that at approximately 5:50 p.m., Wanda came in the den, vacuumed the floor, and then went to take a shower (*id.* at 139).  Petitioner then came into the den, retrieved something from the mantle, and left the den, closing the door behind him (*id.* at 141).  Petitioner returned to the den, replaced the item on the mantle, and left again, closing the door (*id.* at 141–42).  Ms. Watson heard the telephone ring and heard Petitioner say, "Wanda" (*id.* at 139–40, 151–52).  Ms. Watson then heard a "pop pop" (*id.* at 142).  She testified she did not heard any voices or arguing prior to the popping sounds (*id.*).  She testified she and Telaysis (Petitioner and Wanda's twelve-year-old son) began to walk toward Wanda's bedroom, but they stopped when they saw Petitioner outside (*id.* at 142–43).  Telaysis spoke with his father, then he and Ms. Watson went to Wanda's room (*id.* at 143).  Telaysis opened the door, and they saw Wanda lying on the floor dead in her bathrobe (*id.* at 143–44).

Telaysis Lee testified the item Petitioner retrieved from the mantle was a key to the bedroom where Petitioner stayed (Ex. B at 157).  He testified Petitioner retrieved the key from the den, unlocked the bedroom, retrieved something from the bedroom, replaced the key in the den, and then

went to Wanda's bedroom (*id.* at 159–60). Telaysis testified he did not hear arguing, but heard them talking in a normal tone (*id.* at 160). He testified he then heard two gunshots (*id.* at 162). He left his bedroom and saw Petitioner leaving the house with the gun in his hand (*id.* at 162–63). Telaysis asked his dad what the popping sound was, and Petitioner responded he didn't know (*id.* at 163). Telaysis then asked his dad where he was going, and Petitioner responded he would be back in a minute (*id.*).

The medical examiner, Andrea Minyard, testified Wanda Lee was likely shot in the back first, then the chest (Ex. B at 273, 275–76). She opined Ms. Lee was already lying down with her back against a hard surface when she was shot in the chest (*id.* at 274, 276). She testified the angle of the chest wound was consistent with the gun being pointed from the direction of Wanda's head and shooting straight down into her chest (*id.* at 276, 295–96).

After Clarence Russell's testimony, the trial judge excused the jury and heard the State's proffer of Mr. Russell's <u>Williams</u> Rule testimony (Ex. B at 101–09). Mr. Russell testified that in May of 2003, ten months prior to the murder, he was at a gas station, and Petitioner pulled up (*id.* at 102). Petitioner told Mr. Russell he needed to leave his (Petitioner's) wife alone (*id.*). Petitioner then held up a chrome Cyclops gun and said, "Don't make me have to put this here [on you]" (*id.* at 102, 185–86). Mr. Russell testified that two or three months prior to Wanda's murder, he was leaving a barber shop, and Petitioner pulled up beside him in his car (*id.* at 102–03). Petitioner said, "I asked you to leave my wife alone" and again displayed the same gun (*id.* at 103). He testified that Wanda and Petitioner were divorced when both incidents occurred (*id.* at 104).

The State argued Mr. Russell's testimony was relevant to show motive, premeditation, and the absence of mistake or accident (that having been the account Petitioner gave police) (Ex. B at 56–57, 180). The defense argued the <u>Williams</u> Rule evidence was not admissible because the threats were made to a third party, there was no nexus between the threats to Clarence Russell and the killing of Wanda Lee, the first threat was too remote in time, there was insufficient evidence to substantiate Mr. Russell's assertion that the second threat occurred one month prior to the killing, and the prejudicial effect of the testimony outweighed its probative value (*id.* at 50–56, 178–81). The court ruled the evidence was relevant to the issue of premeditation, motive, and lack of mistake

or accidental shooting (*id.* at 181–84). The court also ruled the prejudicial effect did not outweigh its probative value (*id.* at 183). Additionally, Prior to Clarence Russell's testimony regarding the two prior incidents when Petitioner threatened him with a gun, the court instructed the jury as follows:

> The evidence you are about to receive concerning evidence of other crimes allegedly committed by the defendant will be considered by you at this time for the limited purpose of proving motive, intent, knowledge or the absence of mistake or accident on the part of the defendant and you shall consider it only as it relates to those issues. However, the defendant is not on trial for a crime that is not included in the indictment.

(*id.* at 184). Mr. Russell then testified regarding the two incidents as described *supra* (*id.* at 185–87).

The evidence that Petitioner threatened Mr. Russell with a gun on two prior occasions was probative of the issue of Petitioner's motive, premeditation, and the lack of an accidental shooting—it showed that Petitioner strongly desired that the victim's relationship with Mr. Russell would end, and that Petitioner took action to encourage its ending. The First DCA's affirmance of the trial court's admission of the evidence could thus have been supported by the theory that the evidence was relevant to the issue of motive and premeditation, and its probative value substantially outweighed the danger of unfair prejudice. The court's affirmance could also have been supported by the theory that admission of the evidence did not deprive Petitioner of a fair trial, since the State presented far more powerful evidence of Petitioner's motive and intent through the testimony of Kellyssa Abrams and Jimmy Hazzard.

Petitioner has pointed to no Supreme Court precedent holding that the admission of relevant evidence, even evidence of a defendant's other bad acts, violates the Due Process Clause, and, just as the district court determined in Aquino and Quintero, the undersigned has found none.[11] He has

---

[11] In Lisenba v. People of State of California, the defendant challenged on due process grounds the state trial judge's admission of live snakes at trial on the ground that the sole purpose of the production of the snakes was to prejudice the jury against him, and those in the courtroom, including the jury, were in a panic as a result of the snakes being brought into the courtroom. 314 U.S. 219, 228, 62 S. Ct. 280, 86 L. Ed. 166 (1941). Noting that "[the Court] do[es] not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence," the Supreme Court held that the fact that evidence admitted as relevant by a trial court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process. 314 U.S. at 228–29.

In Estelle v. McGuire, the Supreme Court held that McGuire's due process rights were not violated during his prosecution for second degree murder of his infant daughter by the admission of evidence that the infant suffered from

thus failed to show that the First DCA's rejection of his due process claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Therefore, Petitioner is not entitled to federal habeas relief on Ground One.  *See, e.g.,* Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (denying federal habeas relief on petitioner's claim that admission of propensity evidence, that is, evidence of past uncharged sexual offenses, to lend credibility to victim's allegations of assault and kidnapping violated due process, on ground that petitioner pointed to no Supreme Court precedent establishing that admission of propensity evidence necessarily violates due process); Bugh v. Mitchell, 329 F.3d 496, 512–13 (6th Cir. 2003) (state court's admission of "other acts" evidence was not contrary to clearly established Supreme Court precedent, inasmuch as "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts

---

battered child syndrome because evidence of the victim's prior injuries was relevant to issue of intent.  502 U.S. 62, 70, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  The Court expressly declined to address the issue of whether the admission of irrelevant evidence violates the due process guaranteed by the Fourteenth Amendment.  502 U.S. at 70 (citing Spencer v. Texas, 385 U.S. 554, 563–64, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967) (rejecting argument that Due Process Clause requires exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose was served, and recognizing, "Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure.")).

In Dowling v. United States, the Supreme Court rejected a due process challenge to the admission of testimony regarding collateral crime evidence.  493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  During Dowling's trial for bank robbery, the Government presented testimony of Vena Henry, who testified that a man wearing a knitted mask with cutout eyes and carrying a small handgun had, together with a man named Delroy Christian, entered her home approximately two weeks after a bank robbery in the town where she lived.  493 U.S. at 344.  Ms. Henry testified that a struggle ensued, and she unmasked the intruder, whom she identified as Dowling.  *Id.* at 344–45.  Based on this incident, Dowling had been charged under Virgin Islands law with burglary, attempted robbery, assault, and weapons offenses, but had been acquitted after a trial held prior to the federal trial on federal bank robbery and armed robbery charges.  *Id.* at 345.  The Supreme Court held that where the collateral crime testimony was "at least circumstantially valuable in proving [Dowling's] guilt," the admission of this testimony did not violate the Due Process Clause.  *Id.* at 353.  In so holding, the Court rejected Dowling's argument that admission of evidence relating to acquitted conduct is inherently unreliable, as well as his argument that the use of this type of evidence creates a constitutionally unacceptable risk that the jury will convict the defendant on the basis of inferences drawn from the acquitted conduct.  *Id.*

Moreover, while the Supreme Court has addressed whether prior acts evidence is permissible under the Federal Rules of Evidence, *see* Old Chief v. United States, 519 U.S. 172 (1997), Huddleston v. United States, 485 U.S. 681 (1988), the Court has not explicitly addressed admission of such evidence in constitutional terms.

In none of the Supreme Court cases discussed *supra* did the Supreme Court hold that the admission of relevant evidence, including collateral crime evidence or evidence of prior bad acts, violates a defendant's due process rights under the Fourteenth Amendment.

evidence"); *see also* <u>Torres v. Runnels</u>, 137 Fed. Appx. 96, 2005 WL 1507572 (9th Cir. 2005) (unpublished) ("Because there is no United States Supreme Court precedent holding that admission of evidence of prior sexual misconduct to show propensity violates due process, the state court's determination in this case cannot be contrary to or an unreasonable application of clearly established federal law and Torres is not entitled to habeas relief."); <u>Lamarca v. Secretary</u>, No. 8:06-cv-1158-T-17MSS, 2008 WL 3983124, at **28, 31 (M.D. Fla. Aug. 26, 2008) (unpublished) (federal habeas petitioner was not entitled to relief on claim that trial court violated due process in admitting collateral crime evidence where petitioner failed to cite any clearly established Supreme Court precedent which suggested, much less established, that state court's analysis contravened, or was unreasonable under, clearly established Supreme Court precedent), *certificate of appealability denied*, 568 F.3d 929 (11th Cir. 2009).[12]  *But see* <u>Thornburg v. Mullin</u>, 422 F.3d 1113, 1124 (10th Cir. 2005) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 (1991) as clearly established Supreme Court law applicable to claim that trial court's erroneous admission of evidence violated due process and describing <u>Estelle</u> standard as whether introduction of challenged evidence "so infused the trial with unfairness as to deny due process of law.").

B    <u>Ground Two: "Ineffective assistance of appellate counsel for not raising a reversible error in the jury instructions."</u>

Petitioner contends his appellate counsel performed ineffectively by failing to brief the issue of the trial court's denying defense counsel's request for the complete self-defense jury instruction (known as the "long form" instruction), and instead giving only the standard instruction on justifiable and excusable homicide (known as the "short form" instruction) (Doc. 1 at 4, 10–13).   He additionally argues appellate counsel should have briefed the issue of the trial court's failing to give the jury instruction on the justifiable use of non-deadly force (*id.* at 10–11).  Petitioner states he raised this claim in his petition alleging ineffective assistance of counsel (*id.* at 5).

Respondent concedes Petitioner exhausted this claim (Doc. 16 at 17).  Respondent contends Petitioner is not entitled to relief because the jury was properly instructed; therefore, appellate

---

[12] The undersigned recognizes that opinions of circuit courts of appeals other than the Eleventh Circuit and opinions of district courts are not binding on this court and cites them only as persuasive authority.

counsel's failure to argue error was not defective (*id*. at 23–31).  Respondent argues the record shows that at trial, the State submitted proposed jury instructions, including the instructions on self defense or the justifiable use of deadly force (the "long form" instruction), based upon the assumption that Petitioner would take the stand and testify that Wanda Lee was shot as he struggled to get the gun away from her to protect himself (*id.*).  Respondent asserts Petitioner did not take the stand, nor was evidence introduced suggesting Wanda Lee was the aggressor in this particular incident; therefore, the self-defense instruction was omitted as inapplicable (*id.*).  However, the jury was given the standard instruction on justifiable and excusable homicide (*id.*).  Respondent further contends Petitioner failed to satisfy the prejudice prong of the Strickland standard, because he failed to show a reasonable probability of success on appeal had counsel briefed this issue (*id.* at 23–24).

      1.      Clearly Established Federal Law

      The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *See* Smith v. Robbins, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted).   The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  Strickland, 466 U.S. at 697.  The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691.  Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal.  Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal.  *See* Robbins, 528 U.S. at 285.

      The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel.  Appellate counsel cannot be deemed

ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).  Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984).  Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal.  Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

> 2.      Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of appellate counsel in his state habeas petition (Ex. H).  The First DCA denied the petition on the merits (Ex. K).  The First DCA did not cite Strickland; however, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).

Upon review of the parties' briefs submitted in Petitioner's direct appeal, the undersigned concludes that Petitioner failed to demonstrate deficient performance or prejudice.  The state court record shows that during the charge conference, defense counsel requested the instruction on the justifiable use of deadly force on the ground that witnesses testified Ms. Lee was the aggressor during previous arguments between her and Petitioner (Ex. B at 314).  The prosecutor responded that there was no evidence that Petitioner was defending himself in the particular interaction that resulted in Ms. Lee's death, so the "long form" instruction was not required (id.).  The trial court ruled that the "long form" instruction on justifiable use of deadly force was not justified, and included only the following instruction, which is the standard instruction given in all murder and manslaughter cases:

### INTRODUCTION TO HOMICIDE

. . . .
> A killing that is excusable or was committed by the use of justifiable deadly force is lawful.

If you find WANDA DENISE LEE was killed by FRED DOUGLAS LEE, JR. you will then consider the circumstances surrounding the killing in deciding if the killing was first degree murder, or was second degree murder, or manslaughter, or whether the killing was excusable or resulted from justifiable use of deadly force.

### JUSTIFIABLE HOMICIDE

The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing.

### EXCUSABLE HOMICIDE

The killing of a human being is excusable and therefore lawful under any one of the following three circumstances:

1.  When the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or

2.  When the killing occurs by accident and misfortune in the heat of passion upon any sudden and sufficient provocation, or

3.  When the killing is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner.

"Dangerous weapon" is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm.

(Ex. A at 83–84, Ex. B at 314, 381–82).  *See* The Fla. Bar, Fla. Standard Jury Instructions in Criminal Cases, Part Two:  Instructions on Crimes, Chp. 7, § 7.1, Introduction to Homicide (adopted in 1981 and amended in 1990).  These instructions were given immediately prior to the instructions on the elements of first degree premeditated murder and the lesser included offenses of second degree murder and manslaughter (Ex. A at 83–88, Ex. B at 381–86).

Additionally, upon review of the evidence adduced at trial, there was no evidence from which the jury could have inferred that Petitioner acted in self defense on the day of Ms. Lee's death.[13]

---

[13] Kellyssa Abrams (Wanda Lee's daughter) testified that when her mother was angry at Petitioner, she argued with him, and during those arguments her mother called him names (Ex. B at 84–86).  Valerie Reed (Wanda Lee's sister) testified she heard her sister and Petitioner argue, and when they did, they argued loudly (*id*. at 88–89).  Ms. Reed testified that her sister became very loud and boisterous when she got angry (*id*. at 89).  Brandon Jones (Wanda Lee's

Therefore, Petitioner was not entitled to the "long form" instruction on self-defense, set forth in § 3.6(f) of the standard jury instructions.  *See* Palmes v. State, 397 So. 2d 648 (Fla. 1981) (a defendant is entitled to a jury instruction on the theory of his defense only if there is evidence in the record to support it).  Since that issue was reasonably considered to be without merit, appellate counsel cannot be deemed ineffective for failing to raise it.

Moreover, to the extent Petitioner contends appellate counsel should have briefed the issue of the trial court's failure to instruct the jury on the justifiable use of non-deadly force (*see* Doc. 21 at 13), he is not entitled to relief.  Petitioner's trial counsel did not preserve that issue at trial; therefore, appellate counsel's failure to raise it was not deficient.  *See* Diaz, 402 F.3d at 1142 (where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits); Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.

    C.      Ground Three: "Counsel was ineffective in failing to request a competency hearing."

            Ground Four:  "Trial counsel was ineffective by failing to investigate Petitioner's background and mental health."

            Ground Five:  "Trial counsel failed to call witnesses that would have testified to the victim's violent character."

            Ground Six:  "Trial counsel applied a 'do nothing' strategy, engaging in little or no pre-trial investigation, presenting no witnesses, advising Petitioner not to testify, and failed to depose the State's witnesses, as a tactic for opening and closing arguments."

Petitioner asserts four grounds of ineffective assistance of trial counsel (Doc. 1 at 5–6, 14–25).  He contends he exhausted each claim by raising it in a Rule 3.850 motion (*id.* at 5–6).

---

son) testified that his mother and Petitioner threw things at each other (*id.* at 121).  He testified that during one argument, Wanda screamed to call the police, so Brandon called the police, and when the police arrived, Wanda had a knife in her hand (*id.*).  Brandon clarified that Petitioner had already run into the bathroom and closed the door before Wanda got the knife (*id.* at 122).  He also testified that this was the only incident when Wanda obtained a weapon (*id.*).  Telaysis Lee (Wanda and Petitioner's son) testified that when his mother and father argued and his mother became angry, she was loud (*id.* at 160).  There was no evidence that Wanda Lee was the aggressor in any of her and Petitioner's prior arguments.  Additionally, there was no evidence she was aggressive during her interaction which Petitioner that resulted in her death, or that Petitioner was acting in self-defense when he shot her.

Respondent contends the claims were not properly exhausted (Doc. 16 at 24–28). Respondent argues Petitioner presented the claims in his first Rule 3.850 motion, but he failed to appeal the state circuit court's order denying the motion (*id.* at 24–26). Respondent additionally argues Petitioner did not properly exhaust any of these claims in his second Rule 3.850 motion, because that motion was denied on an independent and adequate state procedural rule, and the First DCA affirmed the procedural bar (*id.* at 26–28).

The state court record shows that Petitioner raised each of these four claims in his first Rule 3.850 motion (Ex. L). The state circuit court summarily denied the motion on October 4, 2007, and denied Petitioner's motion for rehearing on December 4, 2007 (Exs. M, O). Petitioner did not file a notice of appeal. On January 8, 2008, Petitioner filed a second Rule 3.850 motion, in which he raised one claim of ineffective assistance of counsel issue with two sub-issues: (1) counsel's failure to pursue a defense of self-defense and present testimony from available witnesses regarding the victim's prior threats and acts of violence toward Petitioner, and (2) counsel's failure to advise Petitioner to testify on his own behalf (Ex. P). On January 22, 2008, the state circuit court summarily denied the motion on the ground that the motion was barred as successive (Ex. Q). On May 8, 2008, Petitioner filed a petition for belated appeal, expressly identifying the January 22, 2008 order as the order he sought to appeal (Ex. R). The First DCA granted a belated appeal of the January 22, 2008 order (Ex. Z) and subsequently affirmed the state circuit court's decision (Ex. CC).

Petitioner's failure to appeal the claims included in his first Rule 3.850 motion constitutes a procedural default. Further, any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *See* Fla. R. App. P. 9.141(c)(4)(a) (petition for belated appeal may not be filed more that two years after expiration of time for filing notice of appeal). Therefore, those claims are barred from federal review. *See* Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006);  O'Sullivan, 526 U.S. at 839–40, 848; Bailey, 172 F.3d at 1302–03.

Additionally, the state courts rejected the ineffective assistance of counsel claim asserted in Petitioner's second Rule 3.850 motion (which is somewhat similar to Ground Five here) based upon a state procedural ground independent of the federal question, namely, the firmly established and

regularly followed procedural rule barring successive post-conviction motions.  *See* Fla. R. Crim.
P. 3.850(f).  Therefore, the claim (including its sub-issues) asserted in the second post-conviction
motion is also procedurally defaulted.  *See* <u>Coleman</u>, 501 U.S. at 734–35 & n.1; <u>Caniff</u>, 269 F.3d at
1247.

     Petitioner does not allege cause for his procedural default, nor has he shown he is entitled
to federal review of his claims through any other recognized exception to the procedural bar.
Therefore, Ground Three, Four, Five, and Six are barred from federal review.

## V.    CERTIFICATE OF APPEALABILITY

     As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court
must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"
and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing
required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court
issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

     The undersigned finds no substantial showing of the denial of a constitutional right.  28
U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L.
Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the
undersigned recommends that the district court deny a certificate of appealability in its final order.

     The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court
may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is
an objection to this recommendation by either party, that party may bring this argument to the
attention of the district judge in the objections permitted to this report and recommendation.

     Accordingly, it is **ORDERED**:

     The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted
for Walter A. McNeil as Respondent.

     And it is respectfully **RECOMMENDED**:

    1.     That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

    2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28th day of June 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

        Objections  to  these  proposed  findings  and  recommendations  may  be  filed  within
fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear
on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of
objections shall be served upon the magistrate judge and all other parties.  Failure to object
may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States
v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).